UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AT&T CORP., a New York corporation,
Plaintiff,

v.

IBASIS, INC., a Delaware corporation,
and CHINA UNICOM CORPORATION,
LTD., a Republic of China corporation,
Defendants.

NO. 04 10871 PBS

MAGISTRATE JUDGE RBC

RECEIPT # 55625
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. T.O.M
DATE 4/30/04

## COMPLAINT

Plaintiff, AT&T Corp., alleges as follows:

### JURISDICTION AND VENUE ALLEGATIONS
### 28 U.S.C. § 1332

1.  This Court has jurisdiction over this matter as complete diversity exists between Plaintiff and Defendants and the amount in controversy is greater than the jurisdictional minimum, pursuant to 28 U.S.C. Section 1332.

2.  Plaintiff, AT&T Corp. ("Plaintiff" or "AT&T"), is, and at all times mentioned herein has been, a New York corporation with its principal place of business in Bedminster, New Jersey.

3.  Defendant, iBasis, Inc. ("iBasis" or "Defendant"), is, and at all times mentioned herein was, a Delaware corporation, doing business in Burlington, Massachusetts. iBasis at all times mentioned herein was, and acted as, the agent of Defendant China Unicom Corporation, Ltd. ("China Unicom").

4.  Defendant, China Unicom Corporation, Ltd., is, and at all times mentioned herein was, a Republic of China corporation with a principal place of business at all relevant times in Beijing, China.

5.  The amount in controversy exceeds $773,000.00 exclusive of interest, attorney's fees and costs.

6.  Venue is proper in the District of Massachusetts because Defendant iBasis is, and at all times mentioned herein was, doing business in Burlington, Massachusetts and a significant portion of the events or omissions alleged herein occurred in Burlington, Massachusetts, including the negotiation and execution of a contract for telecommunication services entered into for the joint benefit of Defendants iBasis and China Unicom (collectively "Defendants").

## GENERAL ALLEGATIONS

7.  Beginning on or about December 10, 1999, iBasis entered into a series of written agreements with AT&T for telecommunication services, which services were contemplated by iBasis to be provided to China Unicom. These written agreements consisted, in part, of AT&T Contract Tariff Order Forms, Contract Tariffs No. 13430 and No. 101417 and AT&T Master Agreement, Master Agreement Reference Number 101417 (collectively the "Contracts"). True and correct copies of the Contracts as executed by iBasis are attached hereto as Exhibit "1" and incorporated fully herein by this reference. Pursuant to the Contracts the following Privateline accounts for telecommunications service were established within AT&T's records: 8002-031-8574 and 8002-167-4058 (the "Accounts").

8.  Pursuant to the Contracts, AT&T agreed to provide telecommunications services to Defendants, and Defendants agreed to pay Plaintiff for the services provided under the Contracts.

9.  The prices for services under the Contracts were set forth in the Contracts and applicable tariffs referenced therein, including Tariffs filed by AT&T

("Tariffs") with the Federal Communications Commission ("FCC") and amended from time to time in accordance with the Communications Act of 1934, 48 Stat. 1064, as amended, 48 U.S.C. § 151, et seq. (the "Act").

10. AT&T filed the Tariffs with the FCC pursuant to 47 U.S.C. § 203(a), which requires that AT&T file tariffs as a Common Carrier under the Act, setting forth the charges imposed by AT&T for interstate services as well as all "classifications, practices and regulations affecting such charges."

11. iBasis entered into the Contracts with AT&T acting as an authorized agent for China Unicom, and with China Unicom's consent.

12. Thereafter, invoices for telecommunications services provided by AT&T were mailed directly to China Unicom and reflected rates in accordance with the Contracts and the filed Tariffs.

13. Beginning on or about October 1, 2001, Defendants failed to pay AT&T for invoiced telecommunications services received under the Accounts pursuant to the Contracts. Thereafter, Defendants failed and refused to pay additional amounts due to AT&T for services provided under the Accounts. Defendants continued to fail and refuse to pay all future invoices, and then, on or about December 18, 2001, AT&T began terminating certain services to Defendant under the Accounts.

14. Beginning on or about December 11, 2001, the Contracts began expiring by their own terms, though Defendants continued to receive and accept services under the Accounts. Each invoice for services rendered under the Accounts and mailed to China Unicom after expiration of the Contracts stated, "If you don't have a signed contract, see TERMS AND LIABILITY LIMITS . . . at att.com/business/agreement ("AT&T Web site")." True and correct copies of the

June 2002 invoices for each of the Accounts are attached hereto collectively as Exhibit "2" and incorporated fully herein by this reference.

15. The AT&T Web site referenced on the invoices stated "AT&T's standard contract for detariffed services not covered by a signed contract or term agreement, including expired contracts or term plans that are not renewed, is the AT&T Business Communications Services Agreement (the 'Agreement'). Additional terms, conditions, charges and price change information for all detariffed business services can be viewed at the AT&T Business Service Guide web site." The Agreement stated "Your use of the AT&T Services provided under this Agreement constitutes your acceptance of the terms of this Agreement. If you do not agree with the terms of this Agreement, do not use the Service and immediately contact your AT&T customer care center or sales representative to cancel the Service . . . You will be responsible for reimbursing AT&T for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments."

16. AT&T has performed all of the conditions, covenants, and promises required to be performed by it in accordance with the terms and conditions of the Accounts, the Contracts and the applicable Tariffs.

17. There is now due, owing, and unpaid from Defendants to AT&T under the Contracts and the Accounts the sum of $773,804.97, together with interest accruing thereon at the highest legal rate from the date invoiced until paid. Despite demand therefor, neither the whole nor any part of this sum has been paid.

18. Additionally, Section 2.3 of the AT&T Master Agreement, Master Agreement Reference Number 101417 provides, in relevant part, as follows:

"[iBasis] shall reimburse AT&T for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments."

## COUNT I
### (Breach of the Contracts against Defendant iBasis)

19. AT&T incorporates herein by this reference paragraphs 1 through 18 inclusive, as if those paragraphs were set forth herein in full.

20. Beginning on or about December 10, 1999, iBasis entered into a series of written contracts, the Contracts, with AT&T for the provision of telecommunications services, true and correct copies of which are attached as Exhibit "1" hereto and incorporated herein by this reference.

21. Under the Contracts, AT&T agreed to provide certain telecommunications services to Defendants, and iBasis agreed to pay charges in accordance therewith.

22. AT&T has performed all conditions, covenants and promises required to be performed by AT&T under the Contracts.

23. Beginning on or about October 1, 2001, iBasis began breaching the Contracts by failing to pay for the telecommunications services provided to Defendants.

24. As a proximate result of iBasis's breach of the obligations under the Contracts, AT&T has suffered damages in the amount of at least $773,804.97, together with interest thereon at the highest legal rate from payment due date until paid, plus attorneys' fees and costs.

25. Section 2.3 of AT&T Master Agreement, Master Agreement Reference Number 101417 provides, in relevant part, as follows: "[iBasis] shall

reimburse AT&T for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments."

## COUNT II
### (Breach of Implied Contract against Defendants)

26.     AT&T incorporates herein by this reference paragraphs 1 through 18, and 20 through 25, inclusive, as if those paragraphs were set forth herein in full.

27.     Beginning on or about December 11, 2001, after the expiration of the initial contract, Defendants utilized AT&T telecommunications services under the Accounts. AT&T supplied the telecommunications services to Defendants under the Accounts with the expectation that Defendants would compensate AT&T for said services at the rates set on the AT&T Web site.

28.     Defendants knew or reasonably should have known that their use of the AT&T telecommunications services created an obligation on Defendants' part to compensate AT&T for these services.

29.     AT&T has performed all of the conditions, covenants, and promises required to be performed by it in accordance with the terms and conditions of the Accounts, including providing China Unicom with a monthly invoice of the charges incurred by Defendants under the Accounts.

30.     Defendants continued to fail and refuse to pay AT&T in full for the telecommunications services provided under the Accounts, and AT&T ultimately terminated the services to Defendants.

31.     As a proximate result of Defendants' breach of their obligations to AT&T under the Accounts, AT&T has suffered damages in the amount of at

least $773,804.97, together with interest thereon at the highest legal rate from payment due date until paid, plus attorneys' fees and costs.

## COUNT III
### (Open Book Account against China Unicom)

32. AT&T incorporates herein by this reference paragraphs 1 through 18, 20 through 25, and 27 through 31, inclusive, as if those paragraphs were set forth herein in full.

33. Within four years last past, China Unicom has become indebted to AT&T on an open book account for money due in the sum of $773,804.97 for telecommunications services provided by AT&T on the Accounts, at Defendants' special instance and request, and for which Defendants agreed to pay the above sum.

34. Neither the whole nor any part of the above sum has been paid, although demand therefor has been made, and there is now due, owing and unpaid the sum of $773,804.97, with interest accruing thereon at the highest legal rate from the date invoiced, until paid.

## COUNT IV
### (Account Stated against China Unicom)

35. AT&T incorporates herein by this reference paragraphs 1 through 18, 20 through 25, 27 through 31, and 33 through 34, inclusive, as if those paragraphs were set forth herein in full.

36. Within four years last past, an account was stated in writing between AT&T and China Unicom, wherein it was agreed that China Unicom was indebted to AT&T in the amount of $773,804.97.

37. Despite demand therefor, neither the whole nor any part of the above sum has been paid, and there is now due, owing and unpaid the sum of

$773,804.97, with interest accruing thereon at the highest legal rate from the date invoiced, until paid.

## COUNT V
### (Quantum Meruit against Defendants)

38.     AT&T incorporates herein by this reference paragraphs 1 through 18, 20 through 25, 27 through 31, 33 through 34, and 36 through 37, inclusive as if those paragraphs were set forth herein in full.

39.     AT&T furnished valuable telecommunications services to Defendants, during the period referenced herein, at Defendants' special instance and request.

40.     The telecommunications services provided by AT&T were furnished to Defendants, and were accepted by Defendants under such circumstances as reasonably notified Defendants that AT&T expected to be paid for said services.

41.     AT&T is entitled to payment in the amount of $773,804.97, with interest accruing thereon at the highest legal rate from the date invoiced, until paid, for the services provided by AT&T to Defendants.

WHEREFORE, Plaintiff, AT&T Corp., prays for judgment against Defendants, jointly and severally, as follows:

1.     For damages in the amount of $773,804.97;

2.     For interest on that sum at the highest legal rate from the date invoiced, until paid;

3.     For costs of suit incurred herein; and

4.  For such other and further relief as the court may deem just and proper.

>AT&T CORP,
>
>By its attorneys,
>
>*John P. Dennis*
>
>John P. Dennis, BBO #120592
>Lynch, Brewer, Hoffman & Fink, LLP
>101 Federal Street, 22nd Floor
>Boston, MA 02110-1800
>(617) 951-0800
>
>CALIFORNIA COUNSEL:
>
>ASSAYAG ❖ MAUSS
>A Professional Law Corporation
>2915 Redhill Avenue
>Suite 200
>Costa Mesa, CA 92626

175779_1.DOC

CT 13430



# AT&T Contract Tariff Order Form

| Customer Name (Full Legal Name): iBasis, Inc. ("Customer") | AT&T Corp. ("AT&T") | |
|---|---|---|
| Customer Address: 20 Second Avenue | AT&T Address: | |
| | | AT&T Contact Name: |
| City Burlington  State MA  Zip Code 01803 | City  State  Zip Code | AT&T Contact Telephone Number: |

Customer hereby places an order for:

☒ New AT&T Contract Tariff (attachment required)     ☐ Existing AT&T Contract Tariff No. _____ (attachment required)

**Existing Pricing Plan Replacement/Discontinuance:**
☐ Check here and identify below any AT&T CT or other AT&T pricing plan being discontinued in conjunction with this order. Also specify the CT No., Plan ID No. or Main Billed Account No. (Note: Charges may apply as specified in the plan being discontinued.)

1. Services will be provided under the Contract Tariff ("CT") ordered hereunder, subject to the rates, terms and conditions in the CT as well as the AT&T tariffs (if any) referenced in the CT ("Applicable Tariffs"), as those Applicable Tariffs may be modified from time to time.
2. This Form (including its addenda, if any), the CT and the Applicable Tariffs constitute the entire agreement (collectively the "Agreement") between Customer and AT&T with respect to the services provided under the CT and supersede any and all prior agreements, proposals, representations, statements, or understandings, whether written or oral, concerning such services or the rights and obligations relating to such services. In the event of any inconsistency between the terms of this Form (including its addenda, if any) and the CT or Applicable Tariffs, the terms of the Applicable Tariffs and CT shall prevail. In the event of any inconsistency between the terms of the CT and the Applicable Tariffs, the terms of the CT shall prevail. Except for changes to rates ( to the extent permitted under the CT ) and changes to the Applicable Tariffs, no change, modification or waiver of any of the terms of this Agreement shall be binding unless reduced to writing and signed by authorized representatives of both parties and, to the extent required by law, filed with the FCC.
3. Except to the extent that federal law applies, the construction, interpretation and performance of this Agreement shall be governed by the substantive law of the State of New York, excluding its choice of law rules.
4. EXCEPT FOR ANY WARRANTIES EXPRESSLY MADE IN THIS AGREEMENT, AT&T EXCLUDES ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. AT&T DOES NOT AUTHORIZE ANYONE TO MAKE A WARRANTY OF ANY KIND ON ITS BEHALF AND CUSTOMER SHOULD NOT RELY ON ANYONE MAKING SUCH STATEMENTS.
5. As to new CTs, Customer may, as its sole remedy, cancel this order for the CT without liability before the CT becomes effective if, without Customer's consent: (a) AT&T fails to file the CT with the FCC within 30 days after the date this Form is signed by both parties; (b) the CT as filed is not consistent with the attached illustrative copy; or (c) the CT does not go into effect within 30 days after filing.
6. Orders for existing CTs will be accepted and implemented by AT&T only if the specified CT is available when ordered and Customer is eligible for the CT.
7. Customer shall provide installation instructions and other information as required by AT&T.

YOUR SIGNATURE ACKNOWLEDGES THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE PROVISIONS OF THIS AGREEMENT AND THAT YOU ARE DULY AUTHORIZED TO SIGN THIS AGREEMENT.

| Customer | AT&T Corp. |
|---|---|
| Full Legal Name: iBasis, Inc. | |
| By: _[signature]_ | By: _[signature]_ |
| (Authorized Customer Signature) | (Authorized AT&T Signature) |
| Joseph C. Essex | Michael Brush Dist Mgr |
| (Typed or Printed Name and Title) | (Typed or Printed Name and Title) |
| Date: 01 Dec 99 | Date: 12/10/99 |

| | |
|---|---|
| iBasis WK-22513 | 12/01/99 8:13 AM |
| AT&T COMMUNICATIONS<br>Adm. Rates and Tariffs<br>Bridgewater, NJ 08807<br>Issued: Iiii | CONTRACT TARIFF NO. XXXX<br>Original Title Page<br>Effective: Eeee |

** All material on this page is new. **

### CONTRACT TARIFF NO. XXXX

### TITLE PAGE

This Contract Tariff applies to AT&T Private Line Services for interstate or foreign communications in accordance with the Communications Act of 1934 as amended.

Telecommunication services provided under this Contract Tariff are furnished by means of wire, radio, satellite, fiber optics or any suitable technology or combination of technologies.



Printed in U.S.A

iBasis WK-22513          12/01/99 8:13 AM

AT&T COMMUNICATIONS      CONTRACT TARIFF NO. XXXX
Adm. Rates and Tariffs      Original Page 1
Bridgewater, NJ 08807
Issued: Iiii      Effective: Eeee

** All material on this page is new.. **

## CONTRACT TARIFF NO. XXXX

### CHECK SHEET

The Title Page and Pages 1 through 4 inclusive of this tariff are effective as of the date shown.

### TABLE OF CONTENTS

| | Page |
|---|---|
| Check Sheet | 1 |
| List of Concurring, Connecting and Other Participating Carriers | 1 |
| Explanation of Symbols - Coding of Tariff Revisions | 1 |
| Trademarks and Service Marks | 2 |
| Explanation of Abbreviations | 2 |
| Contract Summary | 3 |

**LISTS OF CONCURRING, CONNECTING AND OTHER PARTICIPATING CARRIERS**

**Concurring Carriers** - NONE

**Connecting Carriers** - NONE

**Other Participating Carriers** - NONE

**EXPLANATION OF SYMBOLS** - Coding of Tariff Revisions

Revisions to this tariff are coded through the use of symbols. These symbols appear in the right margin of the page. The symbols and their meanings are:

     R - to signify reduction.
     I - to signify increase.
     C - to signify changed regulation.
     T - to signify a change in text but no change in rate or regulation.
     S - to signify reissued matter.
     M - to signify matter relocated without change.
     N - to signify new rate or regulation.
     D - to signify discontinued rate or regulation.
     Z - to signify a correction.

Other marginal codes are used to direct the tariff reader to a footnote for specific information. Codes used for this purpose are lower case letters of the alphabet, e.g., x, y and z. These codes may appear beside the page revision number in the page header or in the right margin opposite specific text.

Printed in U.S.A

iBasis   WK-22513                                           12/01/99  8:13 AM

AT&T COMMUNICATIONS                              CONTRACT TARIFF NO. XXXX
Adm. Rates and Tariffs                                       Original Page 2
Bridgewater, NJ  08807
Issued: Iiii                                                Effective: Eeee

** All material on this page is new. **

**TRADEMARKS AND SERVICE MARKS** - The following marks, to the extent, if any, used throughout this tariff, are trademarks and service marks of AT&T Corp.

|  Trademarks  |  Service Marks  |
|  None        |  ACCUNET        |

**EXPLANATION OF ABBREVIATIONS**

Adm.    - Administrator
IOCs    - Inter Office Channels
kbps    - kilobits per second
Mbps    - Megabits per second

## GENERAL PROVISIONS

I.  Customer's Initial Service Date - The date on which the term of this Contract Tariff begins is referred to as the Customer's Initial Service Date (CISD). The rates and discounts specified in this Contract Tariff will apply commencing at the CISD. The CISD is the date that the Customer begins service under this Contract Tariff.



Printed in U.S.A

iBasis WK-22513                                              12/01/99 8:13 AM

**AT&T COMMUNICATIONS**                          CONTRACT TARIFF NO. XXXX
Adm. Rates and Tariffs                                    Original Page 3
Bridgewater, NJ 08807
Issued: Iiii                                             Effective: Eeee

                    ** All material on this page is new. **

                         CONTRACT TARIFF NO. XXXX

1. **Services Provided:**

    A.  AT&T Private Line Services (AT&T Tariff F.C.C. No. 9)

    1.1. **Initial Quantities** - The Initial Quantities of AT&T Private Line Service components are as follows:

| Quantity | Service | From | To |
|---|---|---|---|
| 1 | International ACCUNET Digital Services-Half Channel at speeds of 2.048 Mbps and 1 associated access connection | Los Angeles, CA | Shanghai, China |

2.  **Contract Term; Renewal Options** - The term of this Contract Tariff (CT) is 24 months. No renewal option is available for this CT.

3.  **Minimum Revenue Commitment** - Not Applicable

4.  **Contract Price** - The Contract Price for the Initial Quantities of AT&T Private Line Services components specified in Section 1.1., preceding, is $16,500 per month.

5.  **Discounts** - None

6.  **Classifications, Practices and Regulations**

    A.  Except as otherwise provided in this Contract Tariff, the rates and regulations that apply to the Services Provided specified in Section 1., preceding, are as set forth in the AT&T tariffs that are referenced in Section 1., preceding, as such tariffs are amended from time to time.



Printed in U.S.A

iBasis WK-22513                                              12/01/99 8:13 AM

AT&T COMMUNICATIONS                              CONTRACT TARIFF NO. XXXX
Adm. Rates and Tariffs                                     Original Page 4
Bridgewater, NJ 08807
Issued: Iiii                                           Effective: Eeee

                    ** All material on this page is new. **

6. **Classifications, Practices and Regulations** (continued)

   B. **Monitoring Conditions** - The Customer must satisfy the following Service Requirement which will be monitored on a monthly basis.

   1. The Customer must have installed and keep in service throughout the remainder of the Contract Tariff Term all of the service components listed in Section 1.1., preceding.

   If the Customer, during the Monitoring Period, has failed to satisfy the above Service Requirement, the customer will be billed an amount equal to 100% of the Contract Price. Any such bill must be paid by the Customer within 30 days.

   C. **Promotions, Credits and Waivers**

   The Customer is ineligible for any promotions, credits or waivers for the Services Provided under this Contract Tariff, which are filed or which may be filed in the AT&T tariffs specified in Section 1., preceding.

   There are no credits or waivers for the Services Provided under this Contract Tariff.

   D. **Discontinuance** - In lieu of any discontinuance With or Without Liability provisions that are specified in the AT&T tariffs referenced in Section 1., preceding, the following provisions shall apply.

   The Customer may discontinue this Contract Tariff prior to the end of the Contract Tariff Term, provided the Customer replaces this Contract Tariff with another AT&T Contract Tariff for AT&T Tariff F.C.C. Nos. 9 and 11 Services having: (i) an equal or greater new monthly Contract Price/revenue commitment and (ii) a new term equal to or greater than the remaining term, but not less than 1 year.

   If the Customer discontinues this Contract Tariff for any reason other than specified above, prior to the expiration of the Contract Tariff Term, a Termination Charge will apply. The Termination Charge will be an amount equal to 100% of the Contract Price for each remaining month of the Contract Tariff Term.

   E. **Other Requirements** - Not Applicable

   F. **Availability** - This Contract Tariff has been developed to respond to competitive circumstances affecting specific Customers who: (1) will order this Contract Tariff only once either by the Customer or any Affiliate of the Customer, which is any entity that owns a controlling interest in either the Customer or an Affiliate of the Customer, or any entity in which a controlling interest is owned by either the Customer or an Affiliate of the Customer and (2) order service within 30 days after the effective date of this Contract Tariff for initial installation of the Services Provided under this Contract Tariff within 60 days after the date ordered.



# AT&T Contract Tariff Order Form

| Customer Name (Full Legal Name): IBasis, Inc ("Customer") | AT&T Corp. ("AT&T") | |
|---|---|---|
| Customer Address: 20 Second Avenue | AT&T Address: | AT&T Contact Name: MARK BAST |
| City Burlington    State MA    Zip Code 01803 | City    State    Zip Code | AT&T Contact Telephone Number: |

Customer hereby places an order for:

☐ **New AT&T Contract Tariff** (attachment required)    ☐ **Existing AT&T Contract Tariff No.** _____ (attachment required)

**Existing Pricing Plan Replacement/Discontinuance:**
☐ Check here and identify below any AT&T CT or other AT&T pricing plan being discontinued in conjunction with this order. Also specify the CT No., Plan ID No. or Main Billed Account No. (Note: Charges may apply as specified in the plan being discontinued.)

1. Services will be provided under the Contract Tariff ("CT") ordered hereunder, subject to the rates, terms and conditions in the CT as well as the AT&T tariffs (if any) referenced in the CT ("Applicable Tariffs"), as those Applicable Tariffs may be modified from time to time. In the event that a court or administrative agency of competent jurisdiction determines that any of the services provided pursuant to the CT are not tariffable, such services shall be treated as if detariffed, in accordance with the provisions of the CT.
2. This Form (including its addenda, if any), the CT and the Applicable Tariffs constitute the entire agreement (collectively the "Agreement") between Customer and AT&T with respect to the services provided under the CT and supersede any and all proposals, representations, statements, or understandings, whether written or oral, concerning such services. In the event of any inconsistency between terms, the order of priority shall be the CT, then the Applicable Tariffs and finally this Form.
3. Except to the extent that federal law applies, the construction, interpretation and performance of this Agreement shall be governed by the substantive law of the State of New York, excluding its choice of law rules.

YOUR SIGNATURE ACKNOWLEDGES THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE PROVISIONS OF THIS AGREEMENT AND THAT YOU ARE DULY AUTHORIZED TO SIGN THIS AGREEMENT.

Customer
Full Legal Name: _____
By: _____ (Authorized Customer Signature)
_____ (Typed or Printed Name and Title)
Date: 4 Apr 2000

AT&T Corp.
By: _____ (Authorized AT&T Signature)
ERIK E. FRIEDEL     GM
(Typed or Printed Name and Title)
Date: 4/11/00

### CPNI Customer Notice and Consent

You can help us offer you products and services tailored to your needs with a one-stop shopping experience. If you consent below, we could share your CPNI with groups within AT&T, its affiliates, and third parties to bring to your attention products and services that might interest you. CPNI (Customer Proprietary Network Information) includes telecommunications services information from your telephone bills or network services records related to the quantity, technical configuration, type, destination and amount, whether long distance, local, and/or wireless. Under federal law, you have a right and AT&T a duty to protect the confidentiality of CPNI. You may refuse to allow such use of your CPNI. This refusal will not affect the services that AT&T provides to you.

Your signature below approves AT&T's use of your CPNI as described above. It is valid until revoked. You may revoke approval at any time by providing written notice to AT&T at the address above. Your signature acknowledges that you are authorized to sign this consent.

Customer Signature: _____    Title: _____    Date: _____

Branch PID: _____ Branch Manager: _____ Customer ID (CID): _____ Strata: _____

AT&T PROPRIETARY

05/11/99

iBasis WK-23775v3

AT&T COMMUNICATIONS
Adm. Rates and Tariffs
Bridgewater, NJ 08807
Issued: Iiii

03/28/00 1:34 PM

CONTRACT TARIFF NO. 13430
1st Revised Page 1
Cancels Original Page 1
Effective: Eeee

## CONTRACT TARIFF NO. 13430

### CHECK SHEET

The Title Page and Pages 1 through 5 inclusive of this tariff are effective as of the date shown. Original and revised pages named below contain all changes from the original tariff that are in effect on the date shown.

| Page | Number of Revision except as Indicated |
|---|---|
| 1 | 1st* |
| 3 | 1st* |
| 4 | 1st* |
| 5 | Original* |

*New or Revised

### TABLE OF CONTENTS

|  | Page |
|---|---|
| Check Sheet............................................. | 1 |
| List of Concurring, Connecting and Other Participating Carriers... | 1 |
| Explanation of Symbols - Coding of Tariff Revisions........ | 1 |
| Trademarks and Service Marks.......................... | 2 |
| Explanation of Abbreviations........................... | 2 |
| Contract Summary...................................... | 3 |

### LISTS OF CONCURRING, CONNECTING AND OTHER PARTICIPATING CARRIERS

Concurring Carriers - NONE

Connecting Carriers - NONE

Other Participating Carriers - NONE

### EXPLANATION OF SYMBOLS - Coding of Tariff Revisions

Revisions to this tariff are coded through the use of symbols. These symbols appear in the right margin of the page. The symbols and their meanings are:

R - to signify reduction.
I - to signify increase.
C - to signify changed regulation.
T - to signify a changed in text but no change in rate or regulation.
S - to signify reissued matter.
M - to signify matter relocated without change.
N - to signify new rate or regulation.
D - to signify discontinued rate or regulation.
Z - to signify a correction.

Other marginal codes are used to direct the tariff reader to a footnote for specific information. Codes used for this purpose are lower case letters of the alphabet, e.g., x, y and z. These codes may appear beside the page revision number in the page header or in the right margin opposite specific text.

iBasis WK-23775v3          03/28/00 1:34 PM

AT&T COMMUNICATIONS         CONTRACT TARIFF NO. 13430
Adm. Rates and Tariffs            1st Revised Page 3
Bridgewater, NJ 08807           Cancels Original Page 3
Issued: Iiii                       Effective: Eeee

## CONTRACT TARIFF NO. 13430

1. **Services Provided:**

   A. AT&T Private Line Services (AT&T Tariff F.C.C. No. 9)

   1.1. **Initial Quantities** - Beginning in the 1st month following the CISD, the Initial Quantities of AT&T Private Line Service components are as follows:    C C C

   | Quantity | Service | From | To |
   |---|---|---|---|
   | 1 | International ACCUNET Digital Services-Half Channel at speeds of 2.048 Mbps and 1 associated access connection | Los Angeles, CA | Shanghai, China |

   1.2. **Initial Quantities** - Beginning in the [?] month following the CISD, the Initial Quantities of AT&T Private Line Service components are as follows:    C C C

   | Quantity | Service | From | To |
   |---|---|---|---|
   | 2 | International ACCUNET Digital Services-Half Channel at speeds of 2.048 Mbps and 1 associated access connection | Los Angeles, CA | Shanghai, China |

   C C C

2. **Contract Term; Renewal Options** - The term of this Contract Tariff (CT) is 24 months. No renewal option is available for this CT.

3. **Minimum Revenue Commitment** - Not applicable.

4. **Contract Price**    C

   A. The Contract Price for the Initial Quantities of AT&T Private Line Services components specified in Section 1.1., preceding, is $16,500 per month.    C

   B. The Contract Price for the Initial Quantities of AT&T Private Line Services components specified in Section 1.2., preceding, is $33,000 per month.    C

5. **Discounts** - None

6. **Classifications, Practices and Regulations**

   A. Except as otherwise provided in this Contract Tariff, the rates and regulations that apply to the Services Provided specified in Section 1., preceding, are as set forth in the AT&T tariffs that are referenced in Section 1., preceding, as such tariffs are amended from time to time.

[Watermark: ILLUSTRATIVE]

iBasis  WK-23775v3                                   03/28/00  1:34 PM

AT&T COMMUNICATIONS                            CONTRACT TARIFF NO. 13430
Adm. Rates and Tariffs                                1st Revised Page 4
Bridgewater, NJ  08807                         Cancels Original Page 4
Issued: Iiii                                         Effective: Eeee


6. Classifications, Practices and Regulations (continued)

   B. Monitoring Conditions - The Customer must satisfy the following
   Service Requirement which will be monitored on a monthly basis.

   1. For months 1 through 4 following the CISD, the Customer must have
   installed and keep in service throughout the remainder of the Contract
   Tariff Term all of the service components listed in Section 1.1.,
   preceding.

   If the Customer, during the Monitoring Period, has failed to satisfy the
   above Service Requirement, the customer will be billed an amount equal to
   100% of the Contract Price. Any such bill must be paid by the Customer
   within 30 days.

   2. For months 5 through 24 following the CISD, the Customer must have   C
   installed and keep in service throughout the remainder of the Contract  ·
   Tariff Term all of the service components listed in Section 1.2.,
   preceding.                                                              C

   If the Customer, during the Monitoring Period, has failed to satisfy the C
   above Service Requirement, the customer will be billed an amount equal to ·
   100% of the Contract Price. Any such bill must be paid by the Customer  ·
   within 30 days.                                                         C

   C. Promotions, Credits and Waivers

   The Customer is ineligible for any promotions, credits or waivers for the
   Services Provided under this Contract Tariff, which are filed or which may
   be filed in the AT&T tariffs specified in Section 1., preceding.

   There are no credits or waivers for the Services Provided under this
   Contract Tariff.

   D. Discontinuance - In lieu of any Discontinuance With or Without
   Liability provisions that are specified in the AT&T tariffs referenced in
   Section 1., preceding, the following provisions shall apply.

   The Customer may discontinue this Contract Tariff prior to the end of the
   Contract Tariff Term, provided the Customer replaces this Contract Tariff
   with another AT&T Contract Tariff for AT&T Tariff F.C.C. Nos. 9 and 11
   Services having (i) an equal or greater new monthly Contract Price/revenue
   commitment and (ii) a new term equal to or greater than the remaining term,
   but not less than 2 years.                                              C

   If the Customer discontinues this CT for any reason other than specified
   above prior to the expiration of the CT Term, a Termination Charge will
   apply. The Termination Charge for Domestic Private Line and Local Channel
   Services will be an amount equal to the sum of (1) 100% of the Contract C
   Price in Section 4.A., preceding, and (2) 100% of the Contract Price in ·
   Section 4.B., preceding for each remaining month of the CT Term.        C

   E. Other Requirements - Not Applicable


            Certain material previously found on this page can now be found on Page 5.

iBasis  WK-23775v3

AT&T COMMUNICATIONS                                03/28/00 1:34 PM
Adm. Rates and Tariffs                          CONTRACT TARIFF NO. 13430
Bridgewater, NJ  08807                                Original Page 5
Issued: Iiii
                                                    Effective: Eeee

F. **Availability** - This Contract Tariff has been developed to respond to competitive circumstances affecting specific Customers who: (1) will order this Contract Tariff only once either by the Customer or any Affiliate of the Customer, which is any entity that owns a controlling interest in either the Customer or an Affiliate of the Customer, or any entity in which a controlling interest is owned by either the Customer or an Affiliate of the Customer and (2) ordered service in a previous availability period or who orders service within 30 days after (TED), for initial installation of the Services Provided under this Contract Tariff within 30 days after the C date ordered.



Certain material on this page formerly appeared on Page 4.

Printed in U.S.A